Our next case for argument today is Zhao v. United States. Ms. Shane. Thank you, Your Honor. Good morning. Today's reports are shown on behalf of the United States. The only thing at issue here is the amount of damages, and the district court made two fundamental errors in determining the size of the award in this case. First, the court's award for lost earnings was impermissibly based on speculation and conjecture. There's nothing in the record to support the court's calculation. Second, with respect to non-economic... Ms. Shane, let me ask you a question about that. I certainly appreciate the United States' position that any award of damages to a five-year-old based on what might happen in 20 years or 40 years is very hard to defend. But what is the alternative? The judge can't say, well, we don't know what your education will be or what your earnings will be, so come back in 20 years. And since that's not an option, what should the judge do? Well, Your Honor, let me just preface this by saying, you know, there were two expert reports submitted. The government submitted an expert report, as did plaintiffs, and neither of those reports used the method or even the method that the court used. I think just to answer your question a little more directly, I mean, I think it's great to establish lost earnings with a fair degree of probability, but that doesn't mean you have to have certainty. And I think when you're dealing with someone who's very young and like us and where there are a wide range of educational and career opportunities potentially available to him, while you can't know for sure what he would have done or will go on to do, I think you can look at statistics and conduct some sort of probabilistic analysis. And, you know, you can compare what S's expected earnings would have been absent. Is that what the government's expert did? She proposed a number of zeroes. Yes, well, what she, her view was that there were, while S would be precluded from certain job opportunities because of his injury, there were still a wide range of potential jobs available to him that would have comparable earnings. And so the expectation would be that his earnings would not be diminished. Did she address the evidence that earnings differentials for people with physical disabilities increase as educational levels increase? She did not. I think that's something that plaintiff's experts addressed in his analysis. But even so, I think it's very telling that a plaintiff's own expert didn't come up with an estimate that was even close to what the district court did. And just to consider what the district court did in terms of its assumption regarding S's earnings absent of injury, the district court assumed that absent of injury with just a high school education, S would have earned $100,000 a year. And, you know, but there's nothing in the record to support that. And I think it's very helpful to look at what both plaintiff's own expert and the government's expert assumed. The plaintiff's own expert in his analysis showed earnings of $40,751 a year with a high school education, as the district court assumed, if S had not been injured. And that was consistent with what the government's expert reported. She reported data from the Bureau of Labor Statistics that the average wage for occupations typically requiring a high school diploma was $41,920 a year. And so unless you think that S is disproportionately likely to have had a higher paying job absent of injury, and there wasn't any evidence suggesting that in the record, then it's difficult to see how the district court could have assumed that S would have earned $100,000 a year with a high school diploma absent of injury. I mean, while it's certainly possible, you know, that sort of near possibility isn't a sufficient basis for a damages award. Okay. And Sean, does the government want a retrial or a remand to Judge Rosenstengel? Well, we're not asking for a retrial, Your Honor. I think we're just asking that the award of damages be vacated for redetermination of damages. We're not, you know, we're not contesting liability. I think it's just a matter of redetermining the amount of the damages award. Without a new trial, just new findings, a new explanation, perhaps new numbers. Is that what you're saying? I think that's right, Your Honor. I wasn't sure from your question if you were suggesting to a different judge or if that was if you were just asking about the trial. Well, that's part of the case under our Circuit Rule 36. That's one part of the issue. But I understood you to say you don't want a new trial, just new findings and new numbers for the damages. So the family doesn't have to go through the trial again. Can I ask you a more general question, Ms. Schoen, quickly? In particular, I'm thinking of the Davis and Doe cases from this court in which in Federal Tort Claims Act cases, we affirmed some startlingly low damage awards. Deferring to district judges' discretion, wide latitude, these are very, very difficult decisions to make. And in light of Davis and Doe, I wonder why we shouldn't be equally deferential to the judges' award of damages in this case, even though it's on the high end. Well, I think there are two things, Your Honor. And maybe it's helpful to sort of pick apart the two pieces of the damages award. I mean, I think with respect to the lost earnings, I think the fundamental problem is that there's just nothing in the record to support the district court's award. I think this isn't a case of deferring because the district court exercised its discretion in arriving at a number that is admittedly difficult, perhaps. Did the $80,000 to $100,000 earnings figure, did that appear in the testimony at all? So that appeared in the testimony on cross-examination of the government's expert in response to questions about the likely wages of skilled union trades. The government's expert testified that certain skilled union trades, like an operating engineer, could potentially earn $80,000 to $100,000 a year. And when asked whether it was possible that absent his injury, S could have earned $80,000 to $100,000 a year. The government's expert testified that it was possible, but she explained that her answer was based on the idea that anything is possible. And she made clear that she didn't know, you know, what S would have been interested in or what kind of career he would have been qualified for or would have pursued. So her testimony, which is, I'm sorry, Your Honor? Yeah, I'm familiar with that testimony. I'm just showing it to Judge Scudder. But I don't think, when I read that in context, this was the vocational expert, correct? Yes, Your Honor. Okay. I didn't read the V.E.'s testimony to say, well, isn't it possible that, you know, the Zao could have been earning a million dollars? I didn't think that this isn't just kind of, you know, in tongue-in-cheek, well, anything's possible. You know, he may win the lottery. I thought it was actually agreeing with, in the course of the cross-examination, yeah, it's possible, but the upper end may be $100,000. Have I read that wrong? I think it's possible. I mean, I don't think she was necessarily suggesting it was likely, and I think she was suggesting that, you know, she didn't know that these sorts of occupations are skilled trades, and not everyone has the requisite talent or skill. And I think the fact that it's possible – Well, the only reason I'm observing that is because when you say, you know, there's absolutely no evidence of it, well, that's the evidence, the government's V.E. saying, yeah, it's possible, you know, the upper end may be $100,000. So it's not – the district judge just didn't flip a coin and come up with $100,000. That's right, Your Honor, but I think the problem is that a mere possibility isn't sufficient for an award of damages. There has to be some likelihood, and I think the standard which plaintiffs cited in their response brief agreeing with us on this is that you need a fair degree of probability, and there is no evidence that there is a fair degree of probability to support the court's award. Well, if you're – Oh, next, excuse me. Michonne, excuse me, please. But is it your theory now on appeal that the district judge was limited to comparing average earnings, let's say for high school graduates with and without significant physical impairments, or college average graduate income with or without physical impairments? I don't want to say necessarily that the court was limited. I mean, I think, you know, that's what plaintiffs' own expert did, and, you know, sort of offhand, I can't think of another way, you know, other than looking at some statistics and some probabilistic analysis to do this, because otherwise – Right, I understand that, but my problem – I'll tell you, I really have a problem with the government making the arguments that you're making after having argued to the district court that the correct number for lost earnings was zero. Well, I – but I think, Your Honor, there was a disagreement as to the effect of the injury on S's likely earnings. And I think that's, you know, there's – I think reasonable minds can disagree in terms of how to, you know, how to determine that. But I think, you know, the fundamental problem here is starting with the assumption that he would have earned $100,000 a year in a skilled union trade is just – I mean, it's just inherently arbitrary. And I think the fact that plaintiffs' own experts assumed earnings of just under $41,000 a year with a high school education if S had not been injured, I think it just underscores the unreasonableness of the district court's award. And I mean, I think, you know, the district court, instead of assuming that S would have earned $100,000 a year in a skilled union trade absent his injury, the district court could have just as easily assumed that he would have been a payroll clerk or cashier even absent his injury, making the award zero. Ms. Schoen, your time has fully expired here, so. Okay. Thank you, Your Honor. Thank you, counsel. Mr. Keefe. Good morning, Your Honors. Tom Keefe representing the plaintiffs now. To the arguments that were just made about the arbitrary number and the constant references that plaintiffs' own experts, I don't know how the expert becomes mine. He was an expert who offered evidence in the plaintiff's case. However, there was evidence offered in the defendant's case, and that evidence came from their vocational rehabilitation specialist. As it relates to the issue of lost earnings, the trier of fact may infer a future loss of earnings from the nature of an injury. And when the plaintiff is a minor in Illinois, the law does not require the plaintiffs to pinpoint with complete accuracy exactly what the plaintiff would have done had the plaintiff not had that injury. In fact, what the law says in Illinois is it says the trier of fact may infer a future loss of earnings from the nature of an injury. And courts have permitted an instruction to that effect where the evidence is adduced of some permanent injury to the minor child. The critical inquiry as it relates to this is the issue of permanency. It isn't the question of attempting to find the correct job. The cross-examination which was conducted on the defendant's vocational expert was focusing on the nature of his disability. This child has suffered an injury to his brachial plexus. It is a very serious injury. It has been described as serious by the evidence, the uncontradicted evidence, I might add, in this case. The brachial plexus, just a brief medical introduction, is that it comes out of the cervical spinal cord, and it controls the movement of the shoulder, the arm, and the hands. In this particular case, one of those nerve roots was literally ripped out of the spinal cord. That's what the definition is of an avulsion. As a result of that injury, that child underwent surgery, and then Dr. Netzel, the only doctor who testified, the government chose not to get an expert to examine this. Counsel, I'd like to bring you back to some of the legal problems in this case. Yes, sir. Let's go past the question about what the right way to figure out lost earnings is and go to the other portion of the damages. Yes, sir. As I understand the United States' contention, it's that the award of $5.5 million for non-economic damages is way over the maximum ever located in a state court in Illinois. Is that a correct statement in your understanding? I don't think it's a correct statement, Your Honor, because the court suggested and cited a case called Skoniewski, and I knew I was going to have to pronounce it for the record, S-K-O-N-I-E-Z-Y. And in that particular case, it involved a brachial plexus injury due to a shoulder dystocia. That particular case, the court awarded $13.298 million. In that particular case, the court found that there were, in fact, incurable neuropathic injuries associated. Admittedly, the injury in that case was probably a greater injury as it would relate to the actual avulsion done to the child. Beyond that, I would say that the court did, in fact, look at a case that it regarded as similar, returned the verdict $5 million less, and did that on the basis of the fact that the description of the injury, which appeared in that Skoniewski case, described a more serious injury. Mr. Keefe, it's Judge Scudder. Do you know of the $13.3 million in that case, what the non-economic damage portion was? Your Honor, yes, I do. It was for lost future earnings, the non-economic damage, pain and suffering was $3 million, disability was $5 million, which in this instance we elected to go on loss of a normal life, and disfigurement was $4 million. So what's that add up to, of the $13.3 million? $5 million and $4 million is $9 million, and $3 million is $12 million, Your Honor. And $1.3 million then would have been lost earnings? Yes, sir, lost earnings and medical expenses. Okay. This is kind of hard on the phone. Should I keep going? Yes. Okay, thank you. So if Judge Eastbrook, if we were talking about the issue of non-economic damages and ARPAN, I would suggest a couple of things as it relates to the analysis that Judge Rosenthal engaged in here, based upon the guidance that this court had given her in not only the ARPAN case, but the guidance that was also given to them in the case of Clanton v. United States, which was another case where, Your Honors, reviewed a decision by Judge Rosenstengel. And in that particular case, what – Could you tell me what difference it makes who the district judge was in some earlier case? This is the second time today that we've heard an ad hominem argument, and I wonder why that is ever appropriate. Your Honor, I suspect it is not appropriate. I apologize for making the reference to Judge Rosenstengel. You are correct. The court – the district court is the district court, and it doesn't make any difference who the judge was, and I stand corrected. As it would relate to the discussion that I wanted to cite to, though, is that assessing non-economic damages, as this court has noted, is a difficult task, and there's really no formula. And the purpose of consulting damage awards in other cases is to facilitate, according to the court's language in Judzie v. Johnson, a more thoughtful, disciplined, and informed award. But there's also the statement to the effect that caution should be the byword when looking at past awards because they offer, quote, at best a rough approximation of damage awards. The court has instructed district courts to engage in comparison of other cases and use their discretion to determine which of those cases they find informative and which of those cases lack sufficient detail, information, or similarity from which they could draw those conclusions. In her order, the court did, in fact, compare cases. In fact, the court compared 16 different cases. I made reference to one of them, the Skidoski case, where there was a verdict of $13 million. In other cases she compared, she found that there was either, A, a settlement, which she found to be distinguishable because, obviously, settlements typically involve the amount of money less than what a jury may or may not award, hence the risk factor, or that there were insufficient facts described. As it would relate to this particular child, I'd like to emphasize to the court that as it relates to this issue of these other cases, the other non-economic damage claims that we're talking about, this child, the evidence in this case, the trial judge heard this. This child is unable to brace himself when he falls. He can't touch the piano keys with his fingers. He can't operate the keyboard. In the Chinese-American culture, predominant use of his left hand is looked down upon. He's already aware of the differences in his inabilities and how that already upsets him at the age of four years old, and in fact frequently wishes and says and has testified that he wishes that he had his brother's right hand. He has diminished grip strength. He's not going to be able to play video games, swing a golf club, swing a baseball bat, play a musical instrument. This is a significantly disabling injury. And the judge, when she was making her findings as it relates to these other issues of non-economic damages, she specifically discussed the effect of this injury on disfigurement. As this child ages, the disfigurement is going to become more pronounced because as he grows, his bones will not grow in tandem, and the difference between his good arm and his bad arm is going to become more and more pronounced. The judge discussed that, was aware of that, and analyzed that when she assessed damages. Moreover, is that in addition to that, this child is going to have, as the child gets older, an element of mental anguish because, as the court has found, mental anguish is an appropriate element of damage in this case. This child is going to be ridiculed. There could be evidence that this child could be ridiculed, and as that child continues to get older, kids can be cruel, and it's a difficult situation. Finally, and equally important, is as it relates to the loss of a normal life. This child is going to have one arm. Whenever there are going to be kids playing ball, this kid is not going to be chosen. He's going to be standing and standing on the sidelines. Maybe I'm a little too passionate about this because I have grandchildren, and I look and see what happens to these children. But I believe that in this case, Judge Rosenstengel heard the evidence. She heard the testimony of Mrs. Zell. She carefully considered what the facts of this case were. She understood this child was 5 years old, and she, in fact, understood and took into account the fact that these elements of damages for a child who doesn't get to come back fall within the ambit of what is, in fact, fair and reasonable. Mr. Keefe, your time has expired, so you may want to wrap up here. Okay. I was just going to say, Your Honor, is the $100,000 figure as it related to the wages, that came from their testimony. It doesn't matter if the evidence comes from a defense expert or a plaintiff's expert. It was that witness who gave us $100,000. It was that witness who gave us $3,000. Yes. Thank you, counsel. Thank you. The case is taken under advisory.